■ Tom Miro et al., Respondents, v Plaza Construction Corp. et al., Appellants, et al., Defendants. (And a Third-Party Action.) [834 NYS2d 36]—

Order, Supreme Court, New York County (Louis B. York, J.), entered June 28, 2005, which granted plaintiffs' motion for partial summary judgment as to liability on the cause of action under Labor Law § 240 (1), reversed, on the law, without costs, the motion denied, and, on a search of the record, defendants-appellants granted summary judgment dismissing the cause of action under Labor Law § 240 (1).

The first-named plaintiff alleges that, while installing fire alarms at 727 Madison Avenue, he slipped and fell as he climbed down a six-foot wooden ladder that was partially covered with sprayed-on fireproofing material. Plaintiff alleges that the fireproofing material caused him to lose his footing. At his deposition, plaintiff testified that he could have requested a different ladder, but did not.

On the foregoing undisputed facts, plaintiffs' motion for partial summary judgment as to liability under Labor Law § 240 (1) should have been denied, and, on a search of the record,

---

defendants should have been granted summary judgment dismissing the claim under that statute.[1] It is well established that proof of a fall from a ladder does not, by itself, establish liability under section 240 (1), unless there is also evidence that the fall was proximately caused by a violation of the statute (*see Blake v Neighborhood Hous. Servs. of N.Y. City*, 1 NY3d 280, 288-290 [2003]). Thus, "where a plaintiff's own actions are the sole proximate cause of the accident, there can be no liability [under the statute]" (*Cahill v Triborough Bridge & Tunnel Auth.*, 4 NY3d 35, 39 [2004]). Several recent unanimous decisions of the Court of Appeals establish that, under this principle, a plaintiff who knowingly chooses to use defective or inadequate equipment, notwithstanding being aware that he or she could request or obtain proper equipment, has no claim under Labor Law § 240 (1). In this case, the uncontroverted evidence establishes that plaintiff recognized the undesirability of the fireproofing material on his ladder, knew full well that he could have requested that his employer provide him with a new, clean ladder, and yet—for no apparent good reason—chose not to make such a request. Thus, plaintiff's decision not to request a new ladder, not any violation of Labor Law § 240 (1), was the sole proximate cause of his accident.

At his deposition, plaintiff testified that if a ladder was "in bad shape, they [i.e., his employer, Consolidated Electric] get rid of it and get you a new one"; that Consolidated Electric was "pretty good" about doing this; that workers would report a problem with a ladder to Consolidated Electric's "stockroom," which would send a replacement ladder to the job site; and—contrary to the dissent's assertion that "there is no proof in this record that any replacement ladder was available on site"—that Consolidated Electric had "a lot of ladders" available for use on its projects. Plaintiff also testified that "[i]f the journeyman sees a ladder, if it's in bad shape, he won't use it"—which can only mean that plaintiff knew he was not required or expected to climb a ladder that appeared to be unfit for use. Nonetheless, when plaintiff noticed the fireproofing on the ladder before starting work on the day of the accident, by his own admission, he "didn't call" Consolidated Electric to request another ladder. Instead, "[he] figured [he] would deal with it and work with it,"

---

1. The complaint also appears to assert claims for common-law negligence and violation of Labor Law §§ 200 and 241 (6), which are not at issue on this appeal.

since there were "just a few hours' worth of work there."[2] Thus, assuming that the fireproofing material rendered the ladder defective for purposes of Labor Law § 240 (1), it was not that defect but, rather, "plaintiff's own actions . . . [that were] the sole proximate cause of the accident" (*Cahill*, 4 NY3d at 39).

As previously noted, several recent Court of Appeals decisions make it clear that, under the foregoing undisputed facts, plaintiff has no cause of action under Labor Law § 240 (1). In *Robinson v East Med. Ctr., LP* (6 NY3d 550 [2006]), for example, the plaintiff was injured when he used a six-foot ladder for a job that he knew required an eight-foot ladder, even though he also knew that there were eight-foot ladders available at the job site. The Court of Appeals explained its dismissal of the Labor Law § 240 (1) claim in *Robinson* as follows: "In short, there were adequate safety devices—eight-foot ladders—available for plaintiff's use at the job site. Plaintiff's own negligent actions—choosing to use a six-foot ladder that he knew was too short for the work to be accomplished and then standing on the ladder's top cap in order to reach the work—were, as a matter of law, the sole proximate cause of his injuries." (6 NY3d at 555.)

Also noteworthy in *Robinson* is the Court of Appeals' observation that, insofar as the plaintiff in that case contended that all eight-foot ladders were being used by others at the time of his accident, the record showed that plaintiff "also conceded that his foreman had not directed him to finish the [work in which he was injured] before undertaking other tasks, and testified that there was sufficient other work to occupy him for the rest of the workday" (*id.*). Similarly, in this case, the record establishes that there was another location on Madison Avenue at which plaintiff had a job assignment, and that it was his practice to alternate working at each location, on some days spending time at both locations. Thus, to the extent plaintiff may have had to wait for a period of time for his employer to supply him with a new ladder, he could have used that time to travel to and work at his other job site. Significantly, there is no evidence that anyone in authority told plaintiff (who was a foreman working alone) that he was required to perform the task in

---

2. The superintendent with whom plaintiff communicated before beginning his work on the subject ladder was an employee of the general contractor (defendant Plaza Construction Corp.), not of Consolidated Electric, the subcontractor that employed plaintiff. Since plaintiff himself testified that he would have directed any request for a replacement ladder to Consolidated Electric, plaintiff's exchange with the superintendent does not demonstrate that plaintiff made any effort to obtain a replacement ladder. Thus, that the superintendent may have "shrugged" in response to plaintiff's comments about the fireproofing is not particularly relevant.

question at the particular time he did it, regardless of the immediate availability of a clean ladder.

The sole ground on which the dissent seeks to distinguish *Robinson* is the supposed lack of evidence in this case "that any replacement ladder was available on site." As previously discussed, contrary to the dissent's assertion, plaintiff's own testimony establishes that he could have requested a replacement ladder from Consolidated Electric, his employer, had he wished to do so. While the record does not elucidate whether the stockroom where Consolidated Electric kept its supply of ladders was or was not on the work site, what is legally significant is the undisputed fact that a new ladder would have been provided to plaintiff *at the job site* had he requested it. No reasoned examination of *Robinson* can support the view that its outcome hinged on the ladders' being stored on the site, as opposed to their ready availability. Try as the dissent may to distinguish *Robinson*, that decision clearly points away from the result the dissent would reach.

Also on point is *Cahill v Triborough Bridge & Tunnel Auth.* (*supra*), in which the Court of Appeals held that an issue of fact as to liability under Labor Law § 240 (1) existed because "a jury could have found that plaintiff had adequate safety devices available; that he knew both that they were available and that he was expected to use them; that he chose for no good reason not to do so; and that had he not made that choice he would not have been injured. Those factual findings would lead to the conclusion that defendant has no liability under Labor Law § 240 (1), and therefore summary judgment should not have been granted in plaintiff's favor." (4 NY3d at 40.)

In *Montgomery v Federal Express Corp.* (4 NY3d 805 [2005]), the plaintiff chose not to get one of the ladders that were available elsewhere at the job site, and instead stood on an inverted bucket to climb up to a motor room elevated above the building's roof; he subsequently injured himself when he jumped down to the roof (*id.* at 806). In affirming this Court's dismissal of the plaintiff's Labor Law § 240 (1) claim, the Court of Appeals stated: "We agree with the Appellate Division that, since ladders were readily available, plaintiff's 'normal and logical response' [quoting 307 AD2d 865, 866 (2003)] should have been to go get one. Plaintiff's choice to use a bucket to get up, and then to jump down, was the sole cause of his injury, and he is therefore not entitled to recover under Labor Law § 240 (1)." (*Id.*, citing *Blake v Neighborhood Hous. Servs. of N.Y. City*, 1 NY3d 280 [2003], *supra* [affirming the dismissal of a Labor Law § 240 (1) complaint based upon a jury verdict finding that the

ladder in question retracted due solely to plaintiff's own negligence in using it, not by reason of any defect].)[3]

The dissent's view that only ladders that are "being stored on site" can be deemed "readily available" for purposes of Labor Law § 240 (1) finds no support in the Court of Appeals decisions discussed above. In *Montgomery*, for example, the Court affirmed the dismissal of the statutory claim even though "[t]here was no ladder in the immediate vicinity" of the rooftop where the plaintiff was doing his job (4 NY3d at 806). Further, it is clear that a ladder does not need to be immediately at hand, either spatially or temporally, to be deemed available for purposes of Labor Law § 240 (1). This is established by *Robinson*, in which the plaintiff's decision to use a too-short ladder was held to have been the sole cause of his injuries even though all ladders of the proper size "may have been in use at the time of [the] accident" (6 NY3d at 555). *Robinson* gives no indication that a proper ladder for which the plaintiff would have had to wait two hours (a period the dissent apparently finds unacceptable) would have to be deemed unavailable as a matter of law, so long as the plaintiff understood that the task could wait until the appropriate equipment became available, as was the case in *Robinson* and is also true here. If the wait for a fit ladder does not render it unavailable, we do not see why it should matter whether the wait is due to the ladder's being used by other workers or by the job site's distance from the stockroom.

The dissent does not point to any evidence that the Plaza superintendent who "shrugged" had any authority to give plaintiff (who was a foreman himself) such a direction. Also beside the point is the dissent's hypothetical about a worker with authority to purchase substitute tools from a nearby store; here, plaintiff testified that all he had to do was ask his employer for a replacement ladder, and one would be provided. The dissent also ignores the evidence that plaintiff had other work to do that would have kept him occupied while waiting for the replacement. Even if he had to wait, this would not justify him in using unfit equipment (*see Robinson*, 6 NY3d at 555 [plaintiff "testified that on prior occasions he had waited for a ladder to be freed up by other workers"]). Finally, the dissent mischaracterizes the evidence in suggesting that plaintiff was "forc[ed] . . . to make affirmative efforts to obtain [a ladder] from an-

---

**3.** In view of the ability plaintiff had in this case to request a replacement ladder, the dissent's reliance on *Rizzo v Hellman Elec. Corp.* (281 AD2d 258 [2001]) is misplaced. The ladder in *Rizzo* could not have been replaced, as it was bolted in place to serve as the permanent means of access to the subsurface crawl space where the plaintiff was directed to work (*id.* at 258).

other location"; plaintiff himself testified that, if he needed a new ladder, all he had to do was ask his employer to supply him with one. If making such a request amounted to "affirmative efforts," so would obtaining a ladder from elsewhere at the same job site.

In our view, Labor Law § 240 (1) does not impose liability on an owner or contractor for a worker's failure to request a new ladder to replace one in an unacceptable condition. In this case, the subject accident would have been avoided if plaintiff had undertaken this " 'normal and logical response' " (*Montgomery*, 4 NY3d at 806, quoting 307 AD2d at 866), which he admittedly knew was available to him. Accordingly, we reverse, deny plaintiffs' motion for partial summary judgment as to liability under Labor Law § 240 (1), and, on a search of the record, grant defendants-appellants summary judgment dismissing the complaint insofar as it is based on that statute (*see Merritt Hill Vineyards v Windy Hgts. Vineyard*, 61 NY2d 106 [1984]). Concur—Friedman, J.P., Williams and McGuire, JJ.

Gonzalez and Sweeny, JJ., dissent in a memorandum by Gonzalez, J., as follows: Plaintiff, employed by a subcontractor retained to install fire alarms in a building under renovation, was allegedly injured when he slipped and fell from a ladder that was partly covered with fireproofing material. The general contractor and owner of the premises argue there is no evidence that the ladder was either defective or a proximate cause of plaintiff's alleged accident; at the very least, they maintain there are triable questions of fact as to whether Labor Law § 240 (1) was violated and whether plaintiff's own actions were the sole proximate cause of the incident. Because I believe that a statutory violation and proximate cause have been demonstrated as a matter of law, I respectfully dissent and would affirm the order granting partial summary judgment to plaintiff.

Not every worker who falls at a construction site is entitled to the protection of section 240 (1). The imposition of liability is "contingent on a statutory violation and proximate cause" (*Blake v Neighborhood Hous. Servs. of N.Y. City*, 1 NY3d 280, 287 [2003]), and no liability attaches when a worker's actions are the sole proximate cause of the accident (*id.* at 290). The record in this case shows that plaintiff was provided with a ladder that had slippery fireproofing residue at the corners of its rungs. Plaintiff testified that he complained to the Plaza superintendent about the condition of the ladder, but the superintendent simply "shrugged." In his testimony, the superintendent stated that he did not recall this conversation, but he did not deny that it occurred. In our view, this evidence establishes that

plaintiff was provided with a defective ladder that was not "so constructed, placed and operated as to give proper protection" to the plaintiff (Labor Law § 240 [1]; *see Rizzo v Hellman Elec. Corp.*, 281 AD2d 258, 259 [2001]).

The general contractor and owner suggest that plaintiff's failure to obtain a replacement ladder was the sole proximate cause of the accident, citing *Robinson v East Med. Ctr., LP* (6 NY3d 550 [2006]), and the majority agrees with this view. *Robinson* (at 554) is distinguishable, however, because in that case the plaintiff knew that a suitable replacement ladder was available at the job site, and he further testified that he routinely helped himself to whatever tools he needed rather than asking any foreman. Here, in contrast, although plaintiff acknowledged that he could have requested a replacement ladder from his employer, there is no proof in this record that any replacement ladder was available on site. Notably, in *Robinson* (*id.*) the Court of Appeals emphasized that a plaintiff's actions will be the sole proximate cause "if adequate safety devices *are available at the job site*, but the worker either does not use or misuses them" (emphasis added). Thus, in the absence of proof that replacement ladders were available at the site or that plaintiff misused the ladder in any way, plaintiff's use of the defective ladder cannot be the sole proximate cause of his injury.

The majority's attempt to draw a distinction between ladders that are "being stored on site" and those that are "readily available" is not convincing. Under the majority's view, a ladder or other safety device is "readily available" if a worker may obtain one by calling his employer and having it delivered to the work site. No reasonable interpretation of the phrase "readily available" supports this view. What if the employer's supply of ladders is two hours away by car? Must the worker suspend his or her work duties and wait for a replacement, in order to afford an owner or general contractor additional time to comply with their statutory duties? What if the worker had authority to purchase substitute tools and materials, and a construction supply store was located 20 yards from the work site? Would the worker's failure to purchase a new ladder eliminate the protections of Labor Law § 240 (1) on the ground that a replacement ladder was "readily available"? Obviously, the majority's rule is unworkable and improperly shifts the obligation to supply adequate safety devices from the owner and general contractor to the worker—precisely the opposite goal of the Labor Law (*Zimmer v Chemung County Performing Arts*, 65 NY2d 513, 520 [1985] [legislative purpose of section 240 is to protect workers by placing ultimate responsibility for safety practices where it belongs, on owners and general contractors]).

In contrast, the Court of Appeals has carved out a common sense limitation on the nondelegable duty imposed by Labor Law § 240 (1) where "adequate safety devices are available at the job site" (*Robinson*, 6 NY3d at 554). In such situations, it is both rational and consistent with the legislative purpose to find that a defendant's duty has been satisfied since even if an individual safety device proves faulty, there are substitute safety devices readily available on-site. However, this sensible limitation should not be extended to a situation where a defendant fails to provide *any* adequate safety devices at the job site, forcing the plaintiff to make affirmative efforts to obtain one from another location. Notably, not a single case relied upon by the majority holds that an owner or contractor may satisfy its duty under Labor Law § 240 (1) by having a supply of adequate safety devices stored at a location away from the work site. Indeed, the three Court of Appeals cases relied upon by the majority all involve the situation where substitute ladders or other safety devices were readily available at the work site (*Robinson*, at 554-555; *Montgomery v Federal Express Corp.*, 4 NY3d 805, 806 [2005]; *Cahill v Triborough Bridge & Tunnel Auth.*, 4 NY3d 35 [2004]).